# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| ESTATE OF LEIGHTON CHARLES FITZ, et al., | |
| Plaintiffs, | No. C16-0047-LTS |
| vs. | **MEMORANDUM OPINION AND ORDER ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT** |
| ROD STONER, et al., | |
| Defendants. | |

## I.  INTRODUCTION

This case is before me on motions (Doc. Nos. 63, 80) for summary judgment filed by defendants Bryce Knudsen, Joseph Metz, City of Iowa Falls, Iowa, and Wade Harken (the City defendants) and by defendants Kyle Haack, Jeremy Schaffer and Bryant Strouse (the State defendants).  Plaintiff has filed resistances to both motions (Doc. Nos. 72, 82) and defendants have filed a replies (Doc. Nos. 75, 84).  Also before me is a motion to strike (Doc. No. 76) filed the City defendants.  I do not find oral argument to be necessary.  *See* N.D. Ia. L.R. 7(c).  The motion is fully submitted and ready for decision.

## II.  PROCEDURAL HISTORY

Plaintiff Charles Fitz commenced this action on March 30, 2016, by filing a petition (Doc. No. 4) in the Iowa District Court for Hardin County in his individual

capacity, as the executor of the estate of Leighton Fitz and on behalf of Leighton Fitz.[1] The petition asserted six counts against nine named defendants.

On April 4, 2016, the defendants removed the action to this court on the basis of federal question jurisdiction. Doc. No. 3. The State defendants then moved to dismiss all claims against them, except the federal constitutional claims against the individual defendants in their individual capacities, on grounds of (1) sovereign immunity, (2) failure to file the prerequisite tort claim under Iowa Code chapter 669 and (3) the principles set forth in *Monell v. Dep't of Social Services*, 436 U.S. 658, 691 (1978). Doc. No. 26. On June 10, 2016, Senior United States District Judge Edward McManus, to whom this case was then assigned, granted that motion in part by, *inter alia*, dismissing the State as a defendant. Doc. No. 33.

Judge McManus then granted Charles leave to file an amended complaint, which he did on October 7, 2016. Doc. No. 43.[2] After an order (Doc. No. 61) in which Judge McManus addressed additional motions to dismiss, the only remaining counts are: (1) violation of clearly established rights guaranteed by the Iowa Constitution, United States Constitution and 42 U.S.C. § 1983 alleged in individual capacity against Knudsen, Metz, Schaffer, Haack and Strouse, (2) violation of clearly established civil rights guaranteed by the United States Constitution, the Iowa Constitution and 42 U.S.C. §

---

[1] To avoid any confusion as between the plaintiff, Charles Fitz, and the decedent, Leighton Fitz, I will refer to them by their first names.

[2] The state court petition named some defendants who are not named in the first amended complaint. They include Hardin County, Iowa, Rod Stoner and Michael Liittschwager. *See* Doc. No. 4. Summary judgment was entered in Hardin County's favor on June 10, 2016, several months before the First Amended Complaint was filed. Doc. No. 33 at 3. On November 4, 2016, the court granted Littschwager's motion to dismiss on grounds that he was not named in the first amended complaint. Doc. No. 50. While Stoner could have requested similar relief, he did not do so. However, I will dismiss Stoner as a defendant *sua sponte* on grounds that no claim upon which relief may be granted is pending against him.

1983 against Harken and Iowa Falls, (3) assault and battery against Knudsen, Metz and Iowa Falls and (4) negligence causing wrongful death against Knudsen, Metz, Harken, and Iowa Falls.

### III. UNDISPUTED FACTS

For purposes of the pending motions for summary judgment, and given the standards I must apply in admitting evidence, the following facts are undisputed:

On April 17, 2014, law enforcement officers responded to a call advising that Leighton was possibly armed at his residence on College Avenue in Iowa Falls, Iowa. Ashely Rasmussen, Leighton's ex-girlfriend, made the report after having a dispute with Leighton. She stated that he had a gun and mentioned the possibility of a "gun rifle." Doc. No. 63-2 at 19. In a subsequent call, she stated that he had handguns and that they had been having relationship problems. *Id*. This information was relayed to officers who then responded and surrounded the residence. *Id*. at 7. Among those at the scene were Iowa State Patrol Troopers Schaffer and Haack, Iowa Division of Narcotics Enforcement Agent Strouse and Iowa Falls Police Officers Knudsen and Metz.

Before arriving at the scene, Knudsen stopped at the police department at defendant Harken's request and obtained two possible contact numbers for Leighton. Doc. No. 63-2 at 7-8. Knudsen relayed the numbers to Harken and advised him that Leighton was inside the residence, possibly armed with a rifle or handguns. *Id*. at 8. Harken provided the numbers to Emerson. One of the numbers was believed to be the home phone number for the residence and the other was the number for Rasmussen's cell phone, which was believed to be located inside the residence and accessible to Leighton. Doc. No. 72-2 at 77. Emerson made four calls, placing two calls to each phone over a five-minute period. Doc. No. 72-2 at 77. Emerson was unable to make contact with Leighton. Doc. No. 63-2 at 8.

3

At the scene, officers were informed that Leighton had access to several weapons, including the possibility of a rifle he made himself, and that he had made suicidal comments and posted on Facebook about having a rifle. Doc. Nos. 72-2 at 15-16, 25. At some point, Leighton exited the residence. He was agitated and yelled at the officers that they were "neo Nazis." Doc. No. 80-1 at 2.[3] Officers shouted at him to get to the ground, keep his hands up and not reach for anything, but Leighton did not appear to follow any of these commands. Doc. No. 72-2 at 65-66, 77-78, 81, 86. Raum testified that he and several other officers yelled commands at Leighton and that more than three officers were yelling various commands at the same time. *Id*. at 66-67.

After Leighton left the home, Reicken and Blau observed Leighton reach into his right pocket, pull out a cell phone and inform officers they should only worry if he reached into his left pocket. *Id*. at 75, 86. Reicken observed Leighton holding his phone and requesting officers come over and read his messages. *Id*. at 86.

After Leighton dropped the phone, Shaffer told Leighton to remove the fixed blade knife he was wearing and Leighton complied, removed the knife and dropping it to the ground. *Id*. at 86-87. Raum testified that officers yelled for Leighton to keep his hands up and to drop the knife concurrently. *Id*. at 70. While Leighton was dropping the knife, officers called out that he was wearing body armor. *Id*. at 22, 81; Doc. No. 62-3 at 8. Ehrhardt and Metz, who were positioned on the side of the house and behind Leighton, attempted to tase Leighton. Ehrhardt gave his taser to Metz, but after Metz heard that Leighton was wearing body armor, the plan was abandoned. Doc. No. 72-2 at 76; Doc. No. 62-3 at 16.

---

[3] While Charles denies paragraph 5 of the State defendants' statement of undisputed facts, which states (among other things) that Leighton was agitated and yelled that the officers were "neo Nazis," the evidence he references in his explanation for the denial does not refute these particular facts. Doc. No. 82-2 at 5-6.

4

After Leighton removed the knife, officers called out that Leighton had guns in his front left pocket and in the back of his waistband. Doc. Nos. 72-2 at 22, 76, 78, 87; Doc. No. 62-3 at 8, 16. Officers then yelled at Leighton to show his hands and to get his hands out of his pockets. Doc. No. 62-3 at 16. Emerson, Raum, Shaffer and Bergman heard Leighton make the statement to the effect that if he was going to use a gun it would be with his left hand. Doc. No. 72-2 at 22, 67, 78, 81. Knudsen also heard commands being given to show his hands and heard Leighton state "if I had a gun" or "if I was gonna use a gun it would be in my left hand." Doc. No. 62-3 at 9.

Shortly thereafter, Leighton reached with his left hand into his left pocket and pulled out a silver handgun. Doc. No. 72-2 at 81. Shaffer saw Leighton grab the gun and begin pulling it out of his pocket. At that point, Shaffer opened fire. *Id*. at 23. Shaffer also told Leighton not to touch the gun, but Leighton dropped his hand to his left side and officers opened fire. *Id*. at 87. Strouse stated during a DCI interview that officers told Leighton to drop the gun after his hand went to his pocket and not before. Doc. No. 82-3 at 24. Strouse affirmed that this was not a command for Leighton to get the gun and drop it, but a reaction to him reaching for the gun. *Id*. at 24. There were commands to drop the gun once Knudsen observed Leighton bring the handgun up from his pocket. Doc. No. 62-3 at 9. According to Blau, when Leighton reached for the gun, shots were fired. Doc. No. 72-2 at 75. A photograph taken as Leighton fell to the ground shows a silver handgun in his left hand. Doc. No. 80-1 at 4; Doc. No. 81 at 31.

Raum testified that Leighton pulled the gun out of his pocket with his left hand enough that he was able to get a glimpse of the weapon to identify that it was a silver handgun. Doc. No. 72-2 at 71. Raum testified that although the weapon was raised just above Leighton' waistline, he does not recall if it was pointed at any officers present. *Id*. at 72-73. Raum also testified that firing began soon after he glimpsed the gun. *Id*.

at 73. Emerson believes shots were fired after the weapon was drawn and was clearly visible. *Id*. at 78. Metz also witnessed Leighton reach to his left side and raise a gun in his left hand and begin to draw it. Doc. No. 62-3 at 16. Metz then fired his weapon. *Id*. Leighton died as a result of the gunshots fired at that time.

## IV. SUMMARY JUDGMENT STANDARDS

Any party may move for summary judgment regarding all or any part of the claims asserted in a case. Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A material fact is one that "'might affect the outcome of the suit under the governing law.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "the substantive law will identify which facts are material." *Id*. Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id*.

An issue of material fact is genuine if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party on the question," *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). Evidence that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249-50, does not make an issue of material fact genuine.

As such, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248-49. The party moving for entry of summary judgment bears "the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or otherwise, designate specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods,* 415 F.3d 910 (8th Cir. 2005). The nonmovant must show an alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322.

In determining if a genuine issue of material fact is present, I must view the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88. Further, I must give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Id*. However, "because we view the facts in the light most favorable to the nonmoving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Instead, "the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996).

## V. DISCUSSION

Defendants' primary argument is that Leighton's constitutional rights were not violated. In addition, the City defendants argue that Charles' responses to their statement of material facts must be struck because Charles failed to comply with this courts' local rules. Charles resists the pending motions and contends that summary judgment is not appropriate. I will address the City's motion to strike before considering the merits of the summary judgment arguments.

### A. *The Motion to Strike*

The City defendants argue that Charles' response to their statement of undisputed facts violates the local rules by: (1) failing to address defendants' numbered statements of fact individually and (2) failing to provide a separate "statement of additional material facts that the resisting party contends precludes summary judgment." They claim prejudice in that Charles' noncompliance made it difficult for them to respond to his allegations of material facts. Charles did not respond to the motion to strike.

The local rules in effect when the City's motion for summary judgment was filed required the resisting party to submit, along with a brief: (1) "[a] response to the statement of material facts in which the resisting party expressly admits, denies, or qualifies each of the moving party's numbered statements of material fact" and (2) "[a] statement of additional material facts that the resisting party contends preclude summary judgment." *See* N.D. Ia. L.R. 56(b) (superseded as of May 1, 2017).[4] Further, "[e]ach individual statement of additional material fact must be concise, numbered separately, and supported by references to those specific pages, paragraphs, or parts of the pleadings, depositions, answers to interrogatories, admissions, exhibits, and affidavits

---

[4] While the local rules were amended effective May 1, 2017, the language of this particular rule was not changed.

that support the statement, with citations to the appendix containing that part of the record." *Id.*

Here, the City defendants correctly point out that Charles failed to file a separate statement of additional material facts. Instead, he appended additional material facts to the end of his response to defendants' statement of material facts. The City defendants also contend that Charles' additional facts violate Local Rule 56(b) in that they are not short and concise. The City defendants complain that these violations made it more difficult for them to comply with the requirement that they expressly admit, deny or qualify each individual statement of additional material facts. Nonetheless, they were able to prepare a response to Charles' additional facts. *See* Doc. No. 76 at 4-55.

I agree with the City defendants that Charles failed to comply with the applicable rules. He (or, more precisely, his attorney) took a substantial risk by disregarding the court's procedural requirements. However, because Charles did set forth additional facts, albeit in an improper format, the City defendants were able to respond to those facts. As such, and while I share the City defendants' frustration with Charles' noncompliance, I find that the resulting prejudice was minor. The motion to strike will be denied.

### B.     *Excessive Force Claims - Knudsen, Metz, Schaffer, Haack and Strouse*

#### 1.     *Overview of Section 1983 Claims*

Title 42 U.S.C. § 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory … subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress …

9

42 U.S.C. § 1983 was designed to provide a "broad remedy for violations of federally protected civil rights." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 685 (1978). However, 42 U.S.C. § 1983 provides no substantive rights. *See Albright v. Oliver*, 510 U.S. 266, 271 (1994); *Graham v. Conner*, 490 U.S. 386, 393-94 (1989); *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979). "One cannot go into court and claim a 'violation of [42 U.S.C.] § 1983'—for [42 U.S.C.] § 1983 by itself does not protect anyone against anything." *Chapman*, 441 U.S. at 617. Rather, 42 U.S.C. § 1983 provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." 42 U.S.C. § 1983; *see also Albright*, 510 U.S. at 271 (42 U.S.C. § 1983 "merely provides a method for vindicating federal rights elsewhere conferred."); *Graham*, 490 U.S. at 393-94 (same); *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980) ("Constitution and laws" means 42 U.S.C. § 1983 provides remedies for violations of rights created by federal statute, as well as those created by the Constitution.). To state a claim under 42 U.S.C. § 1983, a plaintiff must establish: (1) the violation of a right secured by the Constitution or laws of the United States and (2) the alleged deprivation of that right was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

In response to a claim under Section 1983, a defendant may assert the defense of qualified immunity. The Eighth Circuit has explained that:

> Claims against government actors in their individual capacities differ from those in their official capacities as to the type of conduct that is actionable and as to the type of defense that is available. Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself. Personal capacity claims, on the other hand, are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense.

*Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998) (citations omitted). "The defense of qualified immunity gives government officials engaged in discretionary activities immunity from liability unless their conduct violates 'clearly established statutory or constitutional rights.'" *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Officials are entitled to qualified immunity only to the extent that 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hedges v. Poletis*, 177 F.3d 1071, 1074 (8th Cir. 1999) (quoting *Harlow*, 457 U.S. at 818). "Qualified immunity is available 'to all but the plainly incompetent or those who knowingly violate the law.'" *Avalos v. City of Glenwood*, 382 F.3d 792, 798 (8th Cir. 2004) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Id.* (quoting *Davis v. Hall*, 375 F.3d 703, 712 (8th Cir. 2004)) (internal quotation marks omitted). When analyzing qualified immunity, the Eighth Circuit has instructed district courts to conduct a two-part inquiry, that is, ask:

> (1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct.

*Smith v. City of Minneapolis*, 754 F.3d 541, 545-46 (8th Cir. 2014) (quoting *Mitchell v. Shearrer*, 729 F.3d 1070, 1074 (8th Cir. 2013)).

### 2. *Standards for Evaluating the Use of Force*

In order to establish a constitutional violation for excessive use of force, the plaintiff must show that the amount of force used was not reasonable under the circumstances. *Dooley v. Tharp*, 856 F.3d 1177, 1181 (8th Cir. 2017) (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). "The use of deadly force is reasonable where an officer has probable cause to believe that a suspect poses a threat of serious physical harm to the officer or others." *Id.* (quoting *Loch v. City of Litchfield*, 689 F.3d 961,

965 (8th Cir. 2012) (in turn citing *Tennessee v. Garner*, 471 U.S. 1, 11 (1985)). "Before employing deadly force, an officer should give 'some warning' when it is 'feasible' to do so." *Id.* (quoting Loch, 689 F.3d at 967 (in turn quoting *Garner*, 471 U.S. at 11–12)).

"In evaluating the reasonableness of an officer's use of deadly force, a court looks 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Brown v. City of Golden Valley*, 574 F.3d 491, 495 (8th Cir. 2009) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). "The reasonableness inquiry, however, is an objective one: 'the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them.'" *Id.* (quoting *Graham*, 490 U.S. at 397). Circumstances relevant to the reasonableness of the officer's conduct include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (quoting *Graham*, 490 U.S. at 396).

### 3. *Analysis*

Charles claims that Leighton's Fourth Amendment rights were violated as a result of the officers' use of deadly force. The officers contend that their use of force was objectively reasonable under the circumstances. Based on the undisputed facts of record, I find that the officers had probable cause to believe that Fitz posed a serious threat of physical harm. They had been advised, and indeed could observe, that Leighton possessed weapons and was wearing body armor. Leighton did not comply with commands to show his hands, get his hands out of his pockets and get on the ground. He told the officers that if he was going to use a gun, it would be with his left hand. He

then reached for, and began to draw, a gun from his left-side pocket with his left hand. Only at this point were shots fired at Leighton.

Under these undisputed facts, the officers at the scene had an objectively reasonable belief that by reaching for his gun, Leighton posed a threat of serious physical harm. *See Aipperspach v. McInerney*, 766 F.3d 803, 806-07 (8th Cir. 2014), *cert. denied*, 135 S. Ct. 1415 (2015) (collecting cases in which deadly force was objectively reasonable). Leighton informed them how he would reach for his gun and then did so. The officers' actions were objectively reasonable given the information that they had at the time. *See Lacy v. City of Bolivar, Missouri*, 416 F.3d 723, 727 (8th Cir. 2005) ("[T]he reasonableness inquiry extends only to those facts known to the officer at the precise moment the officers effectuate the seizure.") (quoting *Schulz v. Long*, 44 F.3d 643, 648 (8th Cir. 1995)).

Charles, however, contends that the officers' actions were not reasonable because Leighton was attempting to comply with their instructions. Charles argues that the written statements of Ron Duitt, Patty Fogarty and Devan Miranda illustrate that Charles was complying with officers' orders when he was shot. Those statements are unsworn and, with regard to Duitt, is not his own statement.[5] This poses an evidentiary problem. As the Eighth Circuit has explained:

> Rule 56(c)(4) requires "[a]n affidavit or declaration used to support or oppose a motion [to] be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Although Rule 56, as amended in 2010, no longer requires a formal affidavit, an unsworn declaration or statement substituted for a sworn affidavit must still meet important statutory requirements. *See* Fed. R. Civ. P. 56(c) advisory committee's note to 2010 amendment. Under 28 U.S.C. § 1746, an unsworn

---

[5] The Duitt statement appears to be a summary written by an individual who interviewed Duitt. Doc. No. 72-2 at 88.

declaration or statement must be written, signed, dated, and certified as true and correct "under penalty of perjury."

*Banks v. Deere*, 829 F.3d 661, 668 (8th Cir. 2016). Here, none of the statements Charles submitted contain the required certification that it is true and correct "under penalty of perjury." *See* Doc. No. 72-2 at 88-91. As such, they are not admissible.[6]

There is no admissible evidence in the summary judgment record suggesting that Leighton was merely attempting to comply with commands, or that he did not reach into his pocket with his left hand and draw a silver handgun. Based on the undisputed facts of record, it was objectively reasonable for the officers to believe Leighton presented a serious threat of physical injury. They were not required to wait until the gun was drawn or pointed at them in order to use deadly force.[7] *See Thompson v. Hubbard*, 257 F.3d 896, 898-900 (8th Cir. 2011) (finding that the use of deadly force was objectively reasonable when an unarmed subject moved his arms as though reaching for a weapon). The excessive force claims asserted against Knudsen, Metz, Schaffer, Haack and Strouse will be dismissed.[8]

---

[6] Charles' failure to present sworn testimony or statements from these three alleged witnesses is difficult to understand. The unsworn statements are dated, respectively, May 21, 2015, February 2, 2015, and December 4, 2014. Doc. No. 72-2 at 88-91. Charles filed this action in state court on March 30, 2016, and discovery remained open until March 13, 2017. Doc. Nos. 4, 36. Thus, Charles had ample opportunity to gather admissible evidence.

[7] Charles also argues that the use of deadly force without attempting to first use non-lethal force violated Leighton's Fourth Amendment rights. However, there is no constitutional requirement that an officer must first attempt non-lethal force before employing lethal force. *See Estate of Morgan v. Cook*, 686 F.3d 494, 497 (8th Cir. 2012) ("The Constitution … requires only that the seizure be objectively reasonable, not that the officer pursue the most prudent course of conduct as judged by 20/20 hindsight vision.") (quoting *Cole v. Bone*, 993 F.2d 1328, 1334 (8th Cir. 1993)). As such, I find no merit in Charles' argument that the officers should have employed non-lethal force.

[8] Because I have found no violation of Leighton's constitutional rights, it is not necessary to consider whether any of the defendants are entitled to qualified immunity.

C.   *Failure to Train – Harken and the City of Iowa Falls*

Charles alleges that Harken and the City of Iowa Falls are liable under Section 1983 because they oversaw practices, customs and usages that were a direct and proximate cause of the alleged unconstitutional conduct. Harken and the City of Iowa Falls argue (1) the claim against Harken was asserted beyond the applicable statute of limitations and, in any event, (2) there was no underlying unconstitutional conduct. They are correct as to both arguments.

Charles first asserted a claim against Harken in the amended complaint (Doc. No. 43) filed October 7, 2016. The events at issue occurred on April 17, 2014. Doc. No. 43 at 1. While Section 1983 does not contain a statute of limitations, claims brought under Section 1983 are subject to the relevant state's statute of limitations for personal injury actions. *Wycoff v. Menke*, 773 F.2d 983, 984 (8th Cir. 1985) (citing *Wilson v. Garcia*, 471 U.S. 261, 279-80 (1985)). In Iowa, the statute of limitations for such actions is two years. *Id.* (citing Iowa Code § 614.1(2)). Charles' effort to assert a claim against Harken is thus time barred.

Further, "[w]ithout a constitutional violation by the individual officers, there can be no § 1983 or *Monell* failure to train municipal liability." *Sanders v. City of Minneapolis, Minnesota*, 474 F.3d 523, 527 (8th Cir. 2007) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam)). I have already concluded, as a matter of law, that no constitutional violation occurred. As such, the claims against Harken and the City of Iowa Falls necessarily fail on their merits and will be dismissed.

D.   *The State Law Claims – Supplemental Jurisdiction*

Charles also asserts the following state law claims: (a) violations of clearly established civil rights guaranteed by the Iowa Constitution, (b) assault and battery and

(c) negligence. Because I am dismissing all claims brought under federal law, I must consider whether to retain or decline supplemental jurisdiction over the state law claims.

A district court may decline to exercise supplemental jurisdiction when the court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). "A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Crest Const. II, Inc. v. Doe*, 660 F.3d 346, 359 (8th Cir. 2011) (quoting *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009)). While the determination of whether to dismiss state-law claims pursuant to § 1367(c)(3) is a matter of discretion for a district court, "[i]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Barstad v. Murray County*, 420 F.3d 880, 888 (8th Cir. 2005) (quoting *Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 350 n. 7 (1988)). Among other things, this reflects a policy that federal courts should avoid addressing state law issues when possible. *Gregoire v. Class*, 236 F.3d 413, 419-20 (8th Cir. 2000).

For all of these reasons, I find it appropriate to decline jurisdiction over the remaining state law claims. Thus, all of those claims will be dismissed with prejudice

## VI. CONCLUSION

For the reasons set forth herein:

1. Defendant Rod Stoner is hereby **dismissed** as a party to this action on grounds that the first amended complaint asserts no claims against him.

2. The City defendants' motion (Doc. No. 76) to strike is **denied**.

3. Defendants' motions for summary judgment (Doc. No. 63, 80) are hereby **granted** with regard to all federal claims asserted in Counts I and II of the amended

complaint (Doc. No. 43).  All such federal claims are **dismissed with prejudice**. Judgment shall enter in defendants' favor on those claims.

4. With regard to all state law claims asserted in the amended complaint (Doc. No. 43), the exercise of supplemental jurisdiction is hereby **declined** in light of the dismissal of all claims arising under federal law.  As such, the state law claims described in Counts I and II, along with Counts III and IV (which assert only state law claims) are hereby **dismissed without prejudice**.

5. Because this order disposes of all pending claims, this action is hereby **closed**.

**IT IS SO ORDERED.**

**DATED** this 8th day of August, 2017.

_____
Leonard T. Strand, Chief Judge